EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Frank Moreno Valentín<br><br>Peticionario | Certiorari<br><br>2006 TSPR 104<br><br>168 DPR \_\_\_\_ |

Número del Caso: CC-2005-1036

Fecha: 21 de junio de 2006

Tribunal de Apelaciones:

        Región Judicial de Mayagüez

Jueza Ponente:

        Hon. Roberto L. Córdova Arone

Abogado de la Parte Peticionaria:

        Lcdo. Fernando L. Abreu Arias

Oficina del Procurador General:

        Lcdo. Alex Omar Rosa Ambert
        Procurador General Auxiliar

        Lcdo. Salvador J. Antonetti Stutts
        Procurador General

Materia: Supresión de Evidencia

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                            CC-2005-1036

Frank Moreno Valentín

    Peticionario

PER CURIAM

San Juan, Puerto Rico a 21 de junio de 2006

Contra el peticionario, Sr. Frank Moreno Valentín, se radicó una denuncia en la que se le imputó la posesión de la sustancia controlada conocida como "cocaína", ello en violación al Artículo 404 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2404. Alegadamente éste participó en una transacción de drogas que era vigilada por un agente de la policía. Celebrada la vista preliminar, se determinó causa para acusar contra el señor Moreno Valentín.

Luego de la lectura de la acusación, el peticionario presentó una moción de supresión de evidencia al amparo de la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.234. En ésta

cuestionó la legalidad de su arresto, toda vez que los agentes del orden público que intervinieron con él carecían de motivos fundados para realizar la detención sin orden judicial previa.[1] Asimismo, el señor Moreno Valentín adujo que el testimonio de los agentes era estereotipado. Por consiguiente, solicitó la supresión de la evidencia incautada por ser fruto del árbol ponzoñoso.

Por su parte, el Ministerio Público se opuso a la exclusión del material obtenido mediante el arresto sin orden judicial previa. Alegó que el arresto del acusado Moreno Valentín se llevó a cabo según lo permite la Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 11. Además, la fiscalía planteó que el acusado carece de legitimación activa para pedir la supresión de la evidencia incautada toda vez que abandonó su vehículo de motor al percatarse de la presencia de los agentes.

Durante la correspondiente vista de supresión, los testigos de cargo fueron el agente Nelson Mercado Lugo, quien realizó la investigación, y el agente Enrique Pérez de la Torre, quien arrestó al acusado. Así las cosas, el Tribunal de Primera Instancia emitió una resolución en corte abierta mediante la cual declaró con lugar la moción de supresión de evidencia por entender que el testimonio vertido por los agentes de la policía fue uno estereotipado. En la minuta del 26 de agosto de 2005 se

---

[1] En la moción de supresión de evidencia se alegó que en el presente caso no se configuraron los criterios establecidos en la doctrina de evidencia a plena vista, según *Pueblo v. Dolce*, 105 D.P.R. 170 (1970).

resumió brevemente lo acontecido en la vista, sin embargo se eludió precisar las razones por las cuales la prueba de cargo no le mereció credibilidad al juzgador de hechos. En lo pertinente, se apuntó en la referida minuta, citamos *in extenso*:

> Por tratarse de una intervención sin orden de registro y allanamiento, le corresponde al Ministerio Público demostrar su legalidad.

> Por orden del Tribunal, se le toma juramento a la prueba de cargo.

> Fueron escuchados bajo juramento los testimonio (sic) del Agte. Nelson Mercado Lugo, 20346 y Agte. Enrique Pérez de la Torres (sic), 22215. La defensa estipuló la capacidad de ambos.

> Las partes argumentan. La defensa plantea su contención en la moción de supresión de evidencia, es la presunción de ilegalidad el arresto sin ningún tipo de orden. Existen excepciones, que tanto este abogado como el fiscal conocen. Expresa que la intervención del agente Mercado, llama un tanto la atención, por la forma y manera en que se realizó. Plantea que resulta contradictorio el testimonio de este agente y entiende que el arresto ha sido totalmente ilegal, por lo que debe suprimirse la evidencia.

> El Ministerio Público plantea que el agente Mercado ha rodeado su testimonio de circunstancias que lo salvan de ser uno estereotipado, toda vez que no había orden expedida por un magistrado. Entiende que no se trata de un caso de motivos fundados transferidos típico de los que un agente observa la transacción, la persona se va en un vehículo y le corresponde al agente poner al que va a arrestar en la misma condición en que estaba él. Al momento del arresto, el agente investigador estaba presente para indicar a su compañero quiénes fueron las personas que estaban cometiendo el delito en su presencia. Manifiesta que el testimonio es uno creíble, que no estamos ante un testimonio estereotipado, flaco y desencarnado, establecido por la jurisprudencia, que no puede ser rechazado.

El Tribunal procede a dictar Resolución en corte abierta.

De la prueba desfilada, el tribunal determina que no se han dado detalles suficientes y entiende que el testimonio es uno estereotipado, que debemos mirar con sospecha, por lo que declara **CON LUGAR la supresión de evidencia.** (Énfasis en original)

Inconforme con la determinación del foro sentenciador, el 26 de septiembre de 2005, el Procurador General instó una petición de *certiorari* ante el Tribunal de Apelaciones. En su escrito reconoció que, como sucede en el presente caso, cuando la validez de las observaciones y de la intervención gubernamental descansa exclusivamente en el testimonio del agente que efectuó la vigilancia, el tribunal debe escudriñar cuidadosamente su relato. No obstante, adujo que la declaración ofrecida por el policía era "suficientemente específica y no puede ser considerada irreal o improbable." Apéndice del recurso de *certiorari*, pág. 18.

El mismo día de la presentación del recurso de *certiorari* por el Procurador General, el Tribunal de Apelaciones emitió y notificó una resolución en la que concedió hasta el 30 de septiembre de 2005, es decir cuatro (4) días, para que la defensa mostrara causa por la cual no debía revocar la resolución del Tribunal de Primera Instancia de 26 de agosto de 2005.

Así las cosas, el 30 de septiembre --dentro del breve término concedido por el foro apelativo intermedio-- la defensa del acusado presentó una *Moción urgente solicitando*

*resolución fundamentada del foro de instancia y término.*[2]
En ésta, claramente el acusado adujo que "[l]a 'Resolución'
recurrida es en realidad una MINUTA sin fundamentos, y sin
una determinación de hechos sobre la prueba presentada y
admitida en evidencia."[3] El acusado indicó que por estar el
tribunal de instancia en mejor posición para adjudicar la
credibilidad de los testigos, debía solicitársele al foro
sentenciador una resolución fundamentada con las
determinaciones de hechos que lo llevaron a su conclusión.

Sin expresarse sobre lo solicitado en la moción
presentada por la defensa, el Tribunal de Apelaciones
emitió su sentencia el mismo 30 de septiembre de 2005.[4] En
ella reprodujo, con algunas exiguas modificaciones, los
hechos ocurridos el 27 de mayo de 2004 según éstos fueron
relatados por el Procurador General en su escrito. Al así
hacerlo, resolvió que el testimonio del agente del orden
público que realizó la investigación describió con
especificidad cómo se efectuó la alegada transacción de

---

[2] El acusado Moreno Valentín planteó que el Procurador
General había utilizado, para propósito de la revisión
judicial, las declaraciones juradas de los agentes
involucrados en la investigación, las cuales no habían sido
presentadas como evidencia ante el tribunal de instancia.
Dicho argumento fue mencionado vagamente en el recurso
discrecional presentado ante nosotros, por lo que no
entraremos a discutirlo.

[3] Véase apéndice del recurso de *certiorari*, pág. 28.

[4] El único pronunciamiento sobre la moción presentada por la
defensa fue el siguiente: "Sorprendentemente, al leer el
escrito del recurrido encontramos que éste no aduce un solo
fundamento que nos impida resolver que erró el Tribunal de
Primera Instancia al decretar la supresión de la evidencia
incautada al recurrido." Sentencia del Tribunal de
Apelaciones de 30 de septiembre de 2005, apéndice del
recurso de *certiorari*, pág. 40.

drogas, por lo que su declaración no podía considerarse inherentemente irreal o improbable. Concluyó finalmente que existían motivos fundados para el arresto del señor Moreno Valentín y que, siendo válido el arresto, el registro incidental a éste era a su vez legítimo. En consecuencia, el Tribunal de Apelaciones revocó la determinación del tribunal de instancia de suprimir la evidencia ocupada al acusado.

Insatisfecho con tal revocación, el señor Moreno Valentín acudió ante nosotros mediante un recurso de *certiorari* y señaló como único error el siguiente:

> Erró el Honorable Tribunal de Apelaciones al revocar la determinación, del Tribunal de Primera Instancia en la que suprimió evidencia ilegalmente obtenida, sin haber concedido término al Tribunal de Primera Instancia de exponer los fundamentos de su decisión.

Concedimos término al Procurador General para que se expresara sobre los criterios bajo los cuales el Tribunal de Apelaciones podía revocar la determinación del Tribunal de Primera Instancia y concluir que el testimonio del agente en este caso no fue estereotipado.[5] Habiendo comparecido el representante del Estado según requerido, nos encontramos en posición de resolver el asunto planteado, por lo que procedemos a así hacerlo.

## II

En el presente caso no está planteada la corrección de la determinación final que hizo en corte abierta el Tribunal de Primera Instancia suprimiendo la evidencia, la

---

[5] Véase nuestra Resolución de 17 de febrero de 2006.

cual fue plasmada en la minuta de 26 de agosto de 2005. La cuestión a dilucidar es si el Tribunal de Apelaciones podía revocar tal resolución, sin solicitarle antes al tribunal de instancia que fundamentara la misma a la luz del parco contenido de la minuta del 26 de agosto.

El Tribunal de Apelaciones fue creado, originalmente mediante la Ley de la Judicatura de Puerto Rico de 1992, para fungir como foro intermedio entre este Tribunal y el Tribunal de Primera Instancia. *Pueblo v. Pérez Rodríguez*, res. 23 de mayo de 2003, 159 D.P.R. ____, 2003 T.S.P.R. 93. Su propósito fue proveer a los ciudadanos de un tribunal apelativo intermedio mediante el cual un panel de no menos de tres (3) jueces revisara, como cuestión de derecho, las sentencias finales del tribunal de instancia y de las decisiones finales de los organismos y agencias administrativas y cualquier otra resolución u orden dictada a nivel de instancia. Artículo 4.002 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, 4 L.P.R.A. sec. 24u.

Como foro apelativo intermedio tiene que "determinar si el foro sentenciador fundamentó su decisión en una interpretación correcta del derecho positivo y si condujo adecuadamente los procedimientos, de suerte que no se le haya causado perjuicio a las partes." *Dpto. de la Familia v. Shrivers Otero*, 145 D.P.R. 351, 358 (1998). En el descargo de su función, el tribunal debe asegurarse de tener ante sí todos los elementos de juicio necesarios para

cumplir con su función revisora y emitir la correspondiente decisión judicial. *Íbid*, a la pág. 359.

Como se sabe, en decisiones relacionadas a asuntos de carácter interlocutorio en casos penales, los tribunales de instancia mayormente emiten sus determinaciones en corte abierta y recogen las mismas en minutas. *Pueblo v. Pacheco Armand*, 150 D.P.R. 53, 57-58 (2000). No obstante, la mejor práctica sería que los tribunales plasmasen su decisión judicial, debidamente fundamentada, en resoluciones escritas puesto que ello facilitaría la función revisora de los foros apelativos. *Íbid*, a la pág. 58.[6] La facultad del tribunal apelativo intermedio para revisar una resolución contenida en una minuta dependerá de la especificidad con que se expongan los hechos y los fundamentos de la decisión del juez. A tales efectos en *Pueblo v. Pacheco Armand*, *supra*, a la pág. 58, expusimos:

> Sin embargo, por lo señalado antes, resultaría difícil y oneroso obligar a los tribunales de instancia a que consignen en resoluciones escritas fundamentadas todas las determinaciones cotidianas. Por ello, resolvemos que cuando una minuta recoge en términos claros y precisos la decisión del juez que se pretende revisar, tal minuta es suficiente para cumplir con lo que exige la Regla 34(E)(1)(b) del Reglamento del Tribunal de Circuito de Apelaciones. Si el foro apelativo estima que la minuta incluida en el apéndice del recurso por alguna razón no es adecuada, entonces dicho foro debe ordenar al tribunal de instancia emitir pronto una resolución escrita fundamentada.

---

[6] Véase además, *Pueblo v. Ortiz Zayas*, 122 D.P.R. 567, nota al calce 2 (1988); *Pueblo v. Corraliza Collazo*, 121 D.P.R. 244, nota al calce 1 (1988).

Le corresponde al Tribunal de Apelaciones determinar si la minuta que recoge la decisión judicial que se pretende revisar es adecuada o no. Es decir, se recoge "en términos claros y precisos la decisión del juez que se pretende revisar." *Pueblo* v. *Pacheco Amand,* supra. De entender que la minuta es insuficiente, dentro de su función apelativa, **debe solicitar que se fundamente la misma con el fin de tener todos los elementos de juicio necesarios para poder emitir su decisión judicial.**

Precisamente, para lograr que el foro apelativo cuente con todos los elementos necesarios para adjudicar una controversia pendiente ante sí, la Regla 83.1 del Reglamento del Tribunal de Apelaciones de 2004,[7] 4 L.P.R.A. Ap. XXII-A, R. 83.1, permite que el tribunal apelativo intermedio ordene que se emita un dictamen fundamentado cuando la carencia de fundamentos imposibilite ejercer adecuadamente su función revisora. La antedicha

---

[7] La Regla 83.1 del Reglamento del Tribunal de Apelaciones de 2004, 4 L.P.R.A. Ap. XXII-A, R. 83.1, dispone:
> Cuando el Tribunal de Apelaciones determine que la sentencia o resolución final del Tribunal de Primera Instancia o de un organismo o agencia administrativa carece de los fundamentos necesarios para ejercer adecuadamente su función revisora deberá, en auxilio de jurisdicción, retener jurisdicción sobre el recurso y ordenar al tribunal de instancia, organismo o agencia que fundamente la sentencia o resolución final previamente emitida. Una vez recibido el dictamen fundamentado, el Tribunal podrá solicitar de las partes que se expresen y procederá a resolver el asunto.

reglamentación adoptó la norma establecida en *Pueblo v. Pérez Rodríguez*, *supra*.[8]

En *Pueblo v. Pérez Rodríguez*, *supra*, el acusado presentó un recurso de *certiorari* ante el foro apelativo intermedio solicitando la revisión de una determinación adversa en la vista de supresión de evidencia celebrada ante el tribunal de instancia. Dicha determinación fue recogida en una minuta sin detallar los fundamentos por los cuales se denegó la moción de supresión. Resolvimos que el Tribunal de Apelaciones al exigir al foro primario que fundamentara su dictamen, cumplió con su deber de procurar obtener todos los elementos de juicio necesarios para llevar a cabo su función revisora con mayor rigurosidad. Determinamos también que el foro apelativo al remitir el expediente al tribunal de instancia no pierde jurisdicción y por ende, una vez el foro primario fundamente la resolución previamente emitida, el tribunal apelativo procederá a resolver el recurso en sus méritos.

Por otro lado, debe tenerse presente que hemos apoyado la utilización de mecanismos cuyo fin es presentar al tribunal apelativo intermedio la prueba testifical que tuvo ante sí el tribunal de instancia al tomar la decisión cuya revisión se solicita, tales como: la exposición narrativa de la prueba aprobada por el tribunal sentenciador, la transcripción de la evidencia o la exposición narrativa estipulada por las partes. *Sociedad de Gananciales v.*

---

[8] Véase Comentarios a la Regla 83.1 del Reglamento del Tribunal de Apelaciones de 2004.

*García*, 142 D.P.R. 241, 251 (1997).  Véase además, las Reglas 76 y 76.1 del Reglamento del Tribunal de Apelaciones de 2004, 4 L.P.R.A. Ap. XXII-B, R. 76 y 76.1.

Conforme a ello, en una situación similar a la de autos donde el Tribunal de Primera Instancia omitió exponer los fundamentos para ordenar la supresión de la evidencia incautada, en *Pueblo v. Corraliza Collazo*, 121 D.P.R. 244 (1988), ordenamos que se nos remitiera la transcripión de la vista a los fines de emitir nuestra decisión.[9]  Asimismo, en *Sociedad de Gananciales v. García*, *supra*, pág. 260, resolvimos que "antes de aplicar la severa y máxima sanción de la desestimación, [el Tribunal de Apelaciones] debió haber apercibido al demandado-peticionario de su omisión para que éste tomara acción correctiva o debió haber ordenado *motu proprio* la presentación de una exposición narrativa de la prueba."

A la luz de lo anterior, en aquellos casos donde sólo se preceptúa la resolución final sin mayor explicación, el Tribunal de Apelaciones puede, *motu proprio* o a solicitud de parte, ordenar al tribunal de instancia que fundamente su determinación.  Puede además solicitar que se eleve la transcripción de la vista de supresión de evidencia, o que las partes presenten una exposición estipulada de la prueba, en aras de poder cumplir de manera competente con su función revisora.

---

[9] Esta jurisprudencia es anterior a la creación del Tribunal de Apelaciones.

III

El peticionario arguye que para poder decidir si el testimonio vertido en la vista de supresión de evidencia fue uno estereotipado,[10] resultaba imperativo conocer la evidencia específica que el tribunal de instancia sopesó y el fundamento de la determinación tomada por el foro primario.

Por su parte, en su comparecencia, el Procurador General aceptó el planteamiento del acusado de que el Tribunal de Primera Instancia estaba obligado a fundamentar su determinación cuando una parte así se lo solicita y la resolución interlocutoria de la cual se recurre conlleva una valoración de la prueba testifical. No obstante, entiende que de la resolución en controversia se desprende que el fundamento para la exclusión de la evidencia fue la ausencia de elementos que sustentaran los testimonios de los agentes.

Siendo ello así, el Procurador General adujo que el Tribunal de Apelaciones podía atender en los méritos del caso y determinar que los testimonios ofrecidos por los agentes fueron suficientemente detallados, basándose exclusivamente en el relato de lo acontecido en la vista de supresión que el Ministerio Público presentó en el recurso de certiorari. En la petición de certiorari, el representante del Estado describió el testimonio vertido

---

[10] Sobre los criterios para evaluar la credibilidad del testimonio estereotipado, véase *Pueblo v. González del Valle*, 102 D.P.R. 374, 378 (1974).

por los agentes del orden público utilizando las declaraciones juradas de los testigos ofrecidas al Ministerio Público, las cuales el acusado alegó que no habían sido admitidas en evidencia. La referida narración de los testimonios que realizó el Procurador General no puede sustituir la presentación de una exposición narrativa de la prueba estipulada por ambas partes o por el tribunal.

Por ende, habiendo demostrado en su recurso discrecional que los testimonios vertidos por los agentes en la vista de supresión de evidencia fueron suficientemente detallados, el Procurador General sostuvo que el Tribunal de Apelaciones estaba facultado para revocar la determinación del tribunal de instancia.

Ciertamente, de la minuta en controversia se desprende que la razón para acceder a la supresión de la evidencia incautada al acusado se fundamentó en los testimonios de los agentes que testificaron en la vista. El foro de instancia concluyó que las declaraciones presentadas como prueba de cargo constituían testimonio estereotipado, debido a que éstas no expusieron detalles suficientes sobre lo acontecido. De la minuta no se desprende sin embargo, qué dijeron y cómo fue su relato. Sólo sabemos que el foro primario concluyó que fue un testimonio estereotipado, sin más. Es evidente que tal determinación está

inexorablemente atada a la credibilidad que le mereció la prueba de cargo al juzgador.[11]

Resulta evidente entonces que el foro apelativo intermedio no tenía ante sí suficiente información para confirmar o revocar al Tribunal de Primera Instancia. Conforme a ello, resolvemos que el Tribunal de Apelaciones debió requerirle al tribunal revisado que fundamentara su dictamen o que se solicitara de las partes preparar una exposición narrativa de la prueba que recogiera lo acontecido durante la vista de supresión de evidencia, para cumplir con su deber de procurar obtener todos los elementos de juicio necesarios para llevar a cabo su función revisora con mayor competencia.

En virtud de lo antes expuesto, procede expedir el auto y revocar la determinación del tribunal apelativo, para devolver el caso a dicho foro y que éste le ordene al Tribunal de Primera Instancia que elabore los fundamentos para declarar con lugar la moción de supresión. Al así hacerlo, el foro primario deberá ofrecer mayores detalles sobre las declaraciones que escuchó y observó de los agentes del orden público --esto es, el porqué consideró "estereotipado" el testimonio de estos testigos-- y la credibilidad que le merecieron los mismos.

---

[11] Véase *Pueblo v. Bonilla Romero*, 120 D.P.R. 92, 109-110 (1987)("el magistrado que presida una vista sobre supresión de evidencia al amparo de la citada Regla 234 efectivamente está facultado para adjudicar o dirimir credibilidad en la misma.")

IV

En virtud de los fundamentos antes expuestos, se expide el recurso de *certiorari* que nos fue presentado en este caso; se revoca la Sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso a dicho foro para que continúe con los procedimientos conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.

                                  CC-2005-1036

Frank Moreno Valentín

    Peticionario

SENTENCIA

San Juan, Puerto Rico a 21 de junio de 2006

    Por los fundamentos expuestos en la Opinión Per Curiam que antecede, los que se hacen formar parte integral de la presente, se expide el recurso de *certiorari* que nos fue presentado en este caso; se revoca la Sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso a dicho foro para que continúen con los procedimientos conforme a lo aquí resuelto.

    Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

                    Aida Ileana Oquendo Graulau
                  Secretaria del Tribunal Supremo